UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

        vs.          CASE NO. 8:05-CR-144-T-27TGW
                    27 FEBRUARY 2006
                    TAMPA, FLORIDA
                    9:35 - 10:30 AM
                    PAGES 1 - 44

BENJAMIN CHARLES ACKERMAN, JR,

    Defendant.

_____/

TRANSCRIPT OF CHANGE OF PLEA PROCEEDINGS
BEFORE THE HONORABLE JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    **Donald Hansen**
                    **Thomas Smith**
                    United States Attorney's Office
                    Middle District of Florida
                    400 N. Tampa Street
                    Suite 3200
                    Tampa, Florida 33602

For the Defendant:    **Thomas H. Ostrander**
                    2701 Manatee Avenue, W
                    Suite A
                    Bradenton, Florida 34205

Court Reporter:      Linda Starr, RPR
                    Official Court Reporter
                    801 N. Florida Avenue
                    Suite 13B
                    Tampa, Florida 33602

Proceedings recorded and transcribed by computer-aided stenography.

COURTROOM SECURITY OFFICER:  All rise.  This Honorable Court is now in session, The Honorable James D. Whittemore presiding.

Please be seated.

**P R O C E E D I N G S**

THE COURT:  Good morning.

MR. HANSEN:  Good morning.

THE COURT:  I delayed coming in, obviously.  I understand there's been a development in the case.  I have looked at a plea agreement that was filed --

COURTROOM DEPUTY CLERK:  February 3rd.

THE COURT:  Well, filed quite awhile ago.  But as far as I knew when I left last week, we were in a trial posture.

So let's find out what the status is.  This is United States versus Ackerman.

For the government?

MR. HANSEN:  Donald Hansen for the United States, Your Honor.  And assisting me at the table today is Assistant Statewide Attorney Tom Smith.

THE COURT:  What does that mean, Assistant Statewide Attorney?

MR. HANSEN:  He's an Assistant Statewide Attorney, Your Honor.  He's also a -- he was also a Special Assistant U.S. Attorney in our office.

THE COURT: Mr. Smith has been in front of me just a few times.

MR. SMITH: Yes, Your Honor.

MR. HANSEN: I also have ATF Special Agent Carey Hunt, and I've got FDLE Special Agent Jay Scanlon.

THE COURT: Good morning, gentlemen.

And for the defendant?

MR. OSTRANDER: Good morning, Your Honor. Thomas Ostrander for the defendant. And he's present in the courtroom.

As to the status of the case, Your Honor, we had -- we were prepared to plead approximately 10 days ago on Friday, and my client advised me that he had some concerns over the plea and said he would prefer to go to trial.

During the last 10 days, we have had numerous conversations. And after -- finally, I think I've been able to explain things to his satisfaction. And he has advised me that he would prefer to go forward with the plea and he does not want to put the government to its burden.

THE COURT: Well, Mr. Ackerman, that's what I assumed was the posture. But let me begin by ensuring that you understand the proceeding.

We are prepared to try this case. At the same

time, it is your decision whether to enter a guilty plea or to go to trial. We're not in a hurry, other than it is set for trial today, as you know.

THE DEFENDANT: Yes, sir.

THE COURT: If at any time you want to confer with your attorney, please just let me know. You have every right to. And if you have any questions of me, if I can answer them, I will be happy to.

The procedure would be that I would have you placed under oath. The clerk will administer the oath. I will then ask you a number of questions to satisfy myself that you are proceeding voluntarily, in other words, no one is pressuring you or forcing you to do this, that you understand the consequences of pleading guilty, the rights that you're giving up, to ensure that you are entering a knowing and voluntary guilty plea.

There is a plea agreement, which I'll go over with you, as well, to make sure that I understand the plea agreement, and you do, as well.

So if it is your intention to enter a plea pursuant to this plea agreement, I'll have you -- if you will, please, sir, stand and be sworn by the clerk.

COURTROOM DEPUTY CLERK: Do you solemnly swear that the statements you make before this Court will be the truth, the whole truth and nothing but the truth, so

help you God?

THE DEFENDANT: I do.

COURTROOM DEPUTY CLERK: Thank you. Please be seated.

THE COURT: Go ahead and have a seat. Just pull the mic up a little closer to you.

And tell us your full name and your date of birth, please.

THE DEFENDANT: Benjamin Charles Ackerman, Jr., 7/26/72.

THE COURT: How far did you go in school?

THE DEFENDANT: Ninth grade.

THE COURT: Do you read and write the English language?

THE DEFENDANT: Yes.

THE COURT: All right.

Are you at this time under the influence of any medications or any substance that would affect your ability to understand these proceedings?

THE DEFENDANT: No, sir.

THE COURT: And I know you're in custody right now. You have been in custody since the day of your arrest; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Are you being treated or have you

in the last, say, six months been treated for any psychological or psychiatric condition?

THE DEFENDANT: No, sir.

THE COURT: You are now under oath. Do you understand that I will rely on the answers that you give me under oath, and that if you falsely answer any of my questions, that could subject you to a separate prosecution for perjury or making a false statement?

THE DEFENDANT: Yes, sir.

THE COURT: The indictment in this case alleges five separate counts. And as I understand your plea agreement, the parties have agreed that you would plead guilty to Counts One and Five of the indictment.

Is that your understanding, as well?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

Have you had a chance to read over this indictment and discuss it with your attorney?

THE DEFENDANT: That's the one we went over?

MR. OSTRANDER: Yes.

THE DEFENDANT: Yes, sir.

THE COURT: I know we had a hearing on the motion to suppress that Mr. Ostrander filed. We had an evidentiary hearing, and you were here for that.

THE DEFENDANT: Yes, sir.

THE COURT: I entered a ruling denying that motion and the case was then scheduled for trial today.

Do you understand that if you plead guilty pursuant to this plea agreement, there will be no trial?

THE DEFENDANT: Yes, sir.

THE COURT: During the course of a trial, of course, you have certain rights, the first of which is to be represented by an attorney. A jury will be sworn and then impaneled, a jury of 12 people, who will determine whether or not the government has proven your guilt beyond a reasonable doubt. And if you plead guilty, there will be no jury trial.

Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: During the course of that trial, if one were to occur, you would have the right through your attorney to cross-examine the witnesses the government called, as well as to compel the attendance of witnesses, if you have witnesses you would like to call. But if you plead guilty, you would give up that right.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In a trial you have the right, of course, not to testify. No one can force you to testify. But at the same time, you have the right to

testify, if you decide to do so.  But if there's no trial, of course, you would be giving up that right, as well.

Do you understand that?

THE DEFENDANT:  Yes, sir, I do.

THE COURT:  In a criminal trial, if the defendant elects not to testify, the Court would instruct the jury that it could not consider that against you, in other words, they would not be able to punish you or hold that against you if you chose not to testify.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  In other words, it would be the government's burden to establish your guilt beyond a reasonable doubt.  And if the government did not establish to the jury's satisfaction your guilt beyond a reasonable doubt, you would be entitled to be found not guilty.

In other words, it's the entire burden or the sole burden of the government to prove your guilt beyond a reasonable doubt.

Do you understand that you have no burden whatsoever?

THE DEFENDANT:  Yes, sir.

THE COURT: All right.

The plea agreement that I have in front of me, I have a copy, of course, appears to be signed by you, Mr. Ostrander, Mr. Hansen and another Assistant United States Attorney, Mr. Hoffer.

Let me have Mr. Martini hand my copy to you. This is the one I will be working from. If you'll look at the last page, is that your signature on the very last page, or a copy of it?

THE DEFENDANT: Yes, sir, it is.

THE COURT: And I think there are initials on each page. Are those your initials on each page of that agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Is that the entire agreement you have with the government?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any understandings or conditions or terms other than what is contained in that agreement?

THE DEFENDANT: No, sir.

THE COURT: All right.

If you'll hand it to Mr. Ostrander. And, Mr. Ostrander, if you'll just confirm that is the agreement.

MR. OSTRANDER: This is the plea agreement that

we reviewed and executed, Your Honor.

THE COURT: Mr. Hansen, likewise?

MR. HANSEN: Yes, Your Honor. I do have the original.

THE COURT: All right.

Of course, you're represented by Mr. Ostrander. Are you satisfied with the representation he has provided to you?

THE DEFENDANT: Yes, sir, I am.

THE COURT: Is there anything that he has done which you disagree with?

THE DEFENDANT: No, sir.

THE COURT: Is there anything he has not done that you wanted him to do?

THE DEFENDANT: He's a good lawyer.

THE COURT: Well, he is a good lawyer. He's appeared in front of me many, many times. And I know you were probably disappointed with the ruling on the motion to suppress.

But is there anything, any complaints you have about his representation, anything that you feel I should know about before I accept your guilty plea?

THE DEFENDANT: No, sir, I don't.

THE COURT: Has anyone promised you anything --

THE DEFENDANT: No, sir.

THE COURT: -- other than what's in this plea agreement?

THE DEFENDANT: No, sir.

THE COURT: When I say anyone, of course, I include Mr. Ostrander, the government, the agents, anyone.

THE DEFENDANT: No, sir.

THE COURT: Has anyone coerced you or pressured you or threatened you into entering a guilty plea?

THE DEFENDANT: No, sir.

THE COURT: All right.

We're not going to read every word of the plea agreement. But have you had an opportunity to read through it and discuss it thoroughly with Mr. Ostrander?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

I'm going to go over some of the provisions. First of all, it indicates that you will be entering a guilty plea to Counts One and Five of the indictment, and that Count One charges you with being a felon in possession of two firearms. Count Five charges you with conspiracy to manufacture or possess with intent to distribute and to distribute 50 grams or more of cocaine base.

Is that your understanding of what those two

counts charge you with?

THE DEFENDANT: Life, yes, sir.

THE COURT: Count One of the indictment alleges that on or about February 23rd of 2005, in Bradenton, that you possessed two firearms affecting interstate and foreign commerce. They're identified as a nine millimeter pistol and a Smith and Wesson 357, and that when you possessed those firearms, you had been convicted of four felony offenses, and they're set forth in Count One, the first being a sale of cocaine in Manatee County in March of 1992; the second being possession of cocaine, again in Manatee County in February of 1993; the third being possession of cocaine with intent to sell, again in Manatee County in September of 1999; and the fourth would be a possession of cocaine, again in Manatee County in April of 2001.

Count One carries a maximum term of imprisonment of 10 years and a fine of $250,000, as well as a term of supervised release of three years, and a special assessment of $100, which is payable to the government and due at the time of sentencing.

Do you understand that if you plead guilty to Count One, you face up to 10 years of imprisonment?

THE DEFENDANT: Yes, sir.

THE COURT: Are there any minimum mandatory

penalties applicable to this, Mr. Hansen?

MR. HANSEN: Not to Count One, Your Honor.

THE COURT: All right.

As to Count One, in the factual part of the plea agreement beginning on page 15, it alleges that you were a United States citizen, born in 1972, and that you had those felony drug convictions that I summarized once before.

Are those facts true and correct in all respects? In other words, you possessed the two guns, and at the time of your possession, you were -- you had been convicted of those four felony drug offenses in Manatee County?

THE DEFENDANT: Yes, sir.

THE COURT: Count Five on page three of the indictment alleges that on or about February 23rd of 2005, you knowingly and intentionally conspired with others, and there's an individual by the name of Sarah Jackson who is a codefendant, to manufacture and possess with intent to distribute and to distribute 50 grams or more of cocaine base, also called crack.

Do you understand that Count Five is punishable by a mandatory term of life imprisonment without release?

THE DEFENDANT: Yes, sir.

THE COURT: Is that, Mr. Hansen, correct?

MR. HANSEN: Yes. We have filed the 851 enhancement, Your Honor, and that's what he's looking at.

THE COURT: Count Five is also punishable by a fine of $4 million, a term of supervised release of at least 10 years, and a special assessment of $100, which is due at the time of sentencing.

Do you understand the punishment, then, for Count Five includes that fine, that special assessment, that term of supervised release, as well as the mandatory term of life imprisonment without release?

THE DEFENDANT: Yes, sir.

THE COURT: There is no restitution required in this case, Mr. Hansen, correct?

MR. HANSEN: That's correct, Your Honor.

THE COURT: If this case were to go to trial, Mr. Ackerman, the government would be required to prove beyond a reasonable doubt each of the essential elements of Count One and Count Five. And I'm going to go over each of those with you and ensure that you understand those.

First as to Count One, the government would have to prove beyond a reasonable doubt that you knowingly possessed a firearm in or affecting interstate

or foreign commerce, as charged, and Count One charges that you possessed two firearms.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, affecting interstate or foreign commerce means simply that the firearm at some point in time traveled or was shipped in interstate commerce.

Do you understand that? Not that you did it, but perhaps the manufacturer who manufactured it, it was then shipped to a wholesaler who then distributed it and it was then sold on the market at some point.

THE DEFENDANT: Yes, sir.

THE COURT: The second element is that when you possessed those two firearms, the government must establish beyond a reasonable doubt that you had been convicted of a felony offense, that is, an offense for which the penalty is in excess of one year. Those four felony offenses are listed in Count One of the indictment.

Do you understand that the government would have to prove that beyond a reasonable doubt to the jury?

THE DEFENDANT: Yes, sir.

THE COURT: As to Count Five, there are three

essential elements the government would have to prove beyond a reasonable doubt. First, that you, together with one or more individuals in some way or manner came to a mutual understanding to try to accomplish a common, unlawful plan as charged in the indictment; second, that you, knowing the unlawful purpose of the plan, willfully joined in it, that is, you knew the purpose of the plan and that you joined in that plan; and, third, that the object of that plan was to manufacture, possess with the intent to distribute and distribute more than 50 grams of cocaine base.

Do you understand the government would have to prove each of those three elements beyond a reasonable doubt in order for you to be found guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Have you and Mr. Ostrander discussed the application of the advisory sentencing guidelines?

THE DEFENDANT: Yes, we did.

THE COURT: Now, I have not looked at the guidelines as we speak. They are one factor that I will consider in imposing sentence, however.

But the advisory guidelines are instructive because those, together with the number of other considerations, including your background,

characteristics, the nature of the offense, the seriousness of the offense, the need to deter others from engaging in that conduct, as well as to protect the public, all of those factors will be considered by the Court before I determine the appropriate sentence.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Under the sentencing guidelines, there are -- even though they are advisory, there are reasons for departing either below the applicable advisory range or above the applicable advisory range. I don't know that there are any bases, as we speak, for any such departures.

But, for example, if your role in the offense was that of an organizer or a supervisor or a leader, that might provide a basis for enhancing the sentencing range that you otherwise might be exposed to.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, your participation in this conspiracy and this offense, whether you were a minor participant, which might allow you to have a sentence below the otherwise applicable range or if you were a leader might subject you to a higher range.

Do you understand those are considerations the

Court will factor into determining the advisory guideline range in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about the guidelines? They're complicated and lawyers can debate and argue about them. Even though they're advisory, they are important.

THE DEFENDANT: What I know is what me and my lawyer went over.

THE COURT: All right.

Well, Mr. Ostrander is very familiar and experienced with the guidelines, and he may very well have gone over them with you and estimated what he thought might be the guideline range applicable to your case. And he should have done that.

But do you understand that it's nothing more than an estimate based on his experience and good faith understanding of the law applicable to this case?

THE DEFENDANT: Yes, sir.

THE COURT: And as we sit here today, I cannot tell you, nor can he or Mr. Hansen, what the sentence will be or what the advisory guideline range will be until we've heard from the probation office and considered all of the information and facts of this case.

THE DEFENDANT: Yes, sir.

THE COURT: So while what Mr. Ostrander may have estimated or advised you about, do you understand that he can only estimate that sentence and he surely doesn't know what I will do at the time of sentencing?

THE DEFENDANT: Yes, sir.

THE COURT: I also understand, if this plea is accepted pursuant to this agreement, the government will move to dismiss Counts Two, Three and Four of the indictment. Is that your understanding, as well?

THE DEFENDANT: Yes, sir.

THE COURT: By pleading guilty, you become eligible for considering what we call acceptance of responsibility under the advisory guidelines. The agreement provides that the government will not oppose your request for a two-level downward adjustment for acceptance of responsibility, so long as there's no adverse information brought to their knowledge suggesting that that recommendation should not be warranted.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The agreement also contemplates that you will cooperate fully with the United States in the investigation and prosecution of other individuals

and that, if your assistance rises to the level of substantial assistance, the United States Attorney will consider filing what is called a motion for downward departure for substantial assistance.

Do you understand that the decision of whether or not a motion for substantial assistance is filed is entirely up to the United States Attorney's Office?

THE DEFENDANT:  Yes, sir.

THE COURT:  In other words, that's not my decision.

THE DEFENDANT:  Right.

THE COURT:  And Mr. Ostrander cannot force them to file that motion, nor can he file it on your behalf.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  The agreement also provides that if you cooperate with the government, but your cooperation is not completed until after your sentence, the government will consider whether to file a motion to reduce your sentence, what we call a Rule 35 motion.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  And, again, that decision is entirely up to the government, and the Court has no say-so one way or the other as to whether or not that

motion is filed.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Have there been attempts or efforts to gain substantial assistance in this case, Mr. Hansen?

MR. HANSEN: Yes, Your Honor. And we mention in the last sentence of paragraph A-8 found on the top of page five that it is understood by both the United States and the defendant that the cooperation that the defendant provided authorities concerning his supplier subsequent to his arrest in this case will be considered by the United States in filing such a substantial assistance motion on behalf of the defendant.

THE COURT: But the motion has not yet been filed and it's still being considered?

MR. HANSEN: Correct, because, obviously, there was no plea so...

THE COURT: All right.

Do you understand, Mr. Ackerman, that, again, that decision is up to the United States, but they are going to consider, meaning the United States Attorney's Office will consider the information that you provided concerning your supplier, but they haven't yet made a decision whether to file that motion on your behalf?

THE DEFENDANT: Yes, sir.

THE COURT: If the United States Attorney's Office, for whatever reason other than an unconstitutional one, decides that your assistance or your cooperation did not rise to the level of substantial assistance, and they decide not to file a motion, do you understand that you will not be able to challenge that decision either on appeal or what we call collateral attack, meaning habeas corpus or a 2255 motion after sentencing?

THE DEFENDANT: Now I do.

THE COURT: It's up to them. It's not up to me, it's not up to Mr. Ostrander. It depends on the quality and the amount of cooperation you're able to provide.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: This plea agreement also provides on page seven that you have agreed to forfeit or give up to the United States certain things, and they're listed there. First of all, there's $62,760 in currency.

THE DEFENDANT: Yes, sir.

THE COURT: A 1986 Honda, a 1994 Ford van, a 1997 Mercury, a 1997 Mercedes, a 1997 Ford pickup, a 1999 Buick, a 2001 Chevy, I think it was a Suburban SUV, and two weapons, the nine millimeter and the 357 Smith

and Wesson. Is that your agreement, you will give up all of these items to the government, that is, forfeit them to the government?

THE DEFENDANT: I was telling Mr. Ostrander some of these things are not even mine. I have a '97 Ford pickup truck, the white truck, and I have a Grand Marquis -- a Mercury Grand Marquis that I just wrecked. So the rest of these vehicles don't even belong to me.

THE COURT: Well, as I understand it, the agreement is that whatever interest you have you are giving up to the government, whether it's in your name or not. If you have any arguable interest in them, you're giving that up in favor of the government.

MR. OSTRANDER: Do you understand what that means?

THE DEFENDANT: No.

(Discussion was held off the record.)

THE DEFENDANT: Yes, sir.

THE COURT: And I'll hear from the government in a moment. But I would assume from what you say that some of these vehicles are titled in other people's names?

THE DEFENDANT: Not mine.

THE COURT: Right?

THE DEFENDANT: Right.

THE COURT: So to the extent you might claim any interest in these vehicles, you're giving your right to claim that interest up to the government. But you can't give up someone else's claim for ownership.

I'll just use your mother for an example. Let's say one of these vehicles is in your mother's name.

THE DEFENDANT: Right.

THE COURT: What you're giving up is your right to claim any ownership in that particular vehicle, but not your mother's right.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I will also say, and I don't know if this applies, that you are agreeing to cooperate with the government in all respects. So to the extent there may be vehicles owned by others on paper only but they're really yours, you would be agreeing to cooperate and tell the government all the information that they need in order to either acquire those vehicles or have them forfeited to the government.

Do you understand that?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Mr. Hansen, is there anything in particular that we should go over here today with

respect to some of these vehicles that are not titled in this defendant's name?

MR. HANSEN: The -- I think we've covered it. I think you did a good job of covering what -- what the plea agreement sets out.

Basically, the United States has set out the vehicles that we're aware that the defendant had either some interest in or some involvement in the purchase of based upon statements he made after his arrest. And so consequently, that's why we have them in here, just to make sure that anything that he was involved with, that his rights would be given up.

THE COURT: All right.

Mr. Ackerman, if you'd look at the top of page nine, and this is what I was just discussing with you, you agree in your plea agreement to forfeit any interest that you have in those particular vehicles and the two guns, and to take whatever steps are necessary to pass clear title to the United States, including but not limited to surrender of your title, the signing of any consent decrees of forfeiture, and signing any other documents necessary to transfer title to the government.

And you also agree to take all steps necessary to locate any of that property and to pass title to the United States before your sentencing, and to fully

assist the government in the recovery and return to the United States of any of those assets.

That is what I was discussing earlier, in other words, you're agreeing to cooperate with the government to recover any of those assets which you own or have an interest in.

THE DEFENDANT: Yes, sir.

THE COURT: Now, if, for example, one of those vehicles, there's a loan on it with a bank or a lender, you can't give up the lender's right to have the lien satisfied, but you would be giving up your right to claim any interest in that particular vehicle. That's just an example.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: When an individual is sentenced to a term of imprisonment in federal court, when that individual is released, that person is placed on what is known as supervised release. There's no longer parole in the federal system.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Supervised release is a form of supervision, much like being on probation, because a probation officer supervises the individual when they're

released. And those periods of supervised release are imposed with certain conditions, such as you cannot violate the law, you can't possess drugs, illegal drugs, things of that nature.

Do you understand that if you are on supervised release and you violate the terms of any supervised release provision, you could be sent back to prison even though you've already finished your sentence?

THE DEFENDANT: Yes, sir.

THE COURT: If you do plead guilty, as we are talking about today, I will then refer this matter to the United States Probation Office who will prepare what is called a presentence investigation report.

You will have the opportunity to sit down with the probation officer, as well as Mr. Ostrander and the government, and provide information to the probation office which will be included in that report. That report will then be given to me. You'll get a copy as well as Mr. Hansen. And I will use that report to determine the appropriate sentence in this case.

Do you understand that process?

THE DEFENDANT: Yes, sir.

THE COURT: That report will include information concerning your background, your character, the relevant information concerning the offenses, your

job history, your financial situation, your family situation, all of that information which a judge should know about before imposing a sentence.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: There may also be some recommendations from the probation office concerning the application of the sentencing guidelines.

And if, for example, the probation office recommends an adjustment against you because of circumstances or facts, you would have the right, through Mr. Ostrander, to object. And I would have the responsibility of resolving any such objections at the time of sentencing.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, you'll get a chance to review it with Mr. Ostrander before sentencing and place any objections with the probation office, as well as the government will have the right to do. And then at the time of sentencing, if there are any unresolved objections, I will resolve them at that time.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, I'm not a party, the Court,

the judge is not a party to this agreement.

Do you understand that? In other words, I haven't signed it.

THE DEFENDANT: Yes, sir.

THE COURT: Now, it is a recommendation. And I don't know of any reason why I will not follow the recommendation of this agreement.

But do you understand that if I determine for whatever reason that I cannot impose a sentence consistent with this agreement, I'm not bound by it, in other words, I can at the time of sentencing say, no, I don't agree with this agreement and I'm not going to accept your guilty plea?

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If that were to happen, I will tell you that you would be afforded the opportunity to withdraw your guilty plea. In other words, if I'm not going to follow this agreement, I'm not going to force you to plead guilty without the benefit of this agreement.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: There are, however, certain recommendations. For example, the acceptance of

responsibility, I didn't see a low end provision. It may not be applicable in this case, anyway. But to the accident the plea agreement may include a recommendation to me as opposed to an agreement that you have, I could reject that recommendation and you would not necessarily be given an opportunity to withdraw your guilty plea.

Do you understand that? It could be a little confusing.

THE DEFENDANT: Yeah, it is.

THE COURT: All right.

There's one recommendation that I've gone over and, that is, if the government does not learn of any facts otherwise, the government will not oppose a two-level adjustment downward in your favor because you've pled guilty and accepted full responsibility. That's a recommendation.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It's not binding on the judge. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I intend to follow it unless there's other information brought to my attention. For example, let's just use a hypothetical that -- and I can't think of one off the top of my head. But perhaps

some facts are brought to my attention in your presentence report suggesting that you have not fully accepted responsibility for your actions, and even if the government does not object to a two-level adjustment, I may determine that you're not entitled to that. And if I do so, you would not necessarily be given an opportunity to withdraw your plea.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: On page 13 of your plea agreement, there is a provision which we call the appeal waiver clause. I want to go over that with you very carefully.

If I accept your guilty plea pursuant to this plea agreement and impose sentence, in accordance with this agreement, you are waiving or giving up your right to appeal your sentence or to challenge it after the fact.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, there are a couple of exceptions. First of all, if I impose a sentence that's illegal, that is, for example, higher than the statutory maximum sentence, you can appeal that.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: It also provides an exception, if I were to impose a sentence which violated the Eighth Amendment to the Constitution which guards against cruel and unusual punishment, you would have the right to appeal that decision.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The third exception would be if I determined that your sentence should be greater than the advisory guideline range under the sentencing guidelines, you would have the right to appeal that decision, as well.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Other than those three reasons, you are giving up your right to challenge the sentence that I impose even if I make an error in determining the applicable sentencing guideline range under the United States Sentencing Guidelines.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: There is one other circumstance where you might have the opportunity to participate in an appeal and, that is, if I sentenced you in a way that the government believed was unreasonable, in other

words, I give you a sentence they thought was too light, too lenient. The government could appeal from that sentence. And if the government chose to appeal, you, of course, would have the right through counsel to defend the sentence and participate in the appeal.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: The bottom line is you are -- by virtue of this agreement, unless I impose an illegal sentence, unconstitutional sentence, or I exceed the advisory guideline range, you're giving up your right to challenge on appeal or even in a habeas corpus petition after sentencing your right to challenge or appeal that sentence.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: If you plead guilty to Counts One and Five, under this plea agreement you will be adjudicated guilty of those offenses. And, of course, those are felony offenses. And even though you've been previously convicted of a felony offense in state court, I need to instruct you and ensure you understand that if you are convicted of these felonies, you will be deprived of certain rights, including the right to vote, the right to hold public office, the right to serve on a

jury and the right to have any possession of a firearm.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any questions about the possibly penalties provided by law for Counts One and Five?

THE DEFENDANT: No, sir.

THE COURT: There's a mandatory life in this case, right, Mr. Hansen?

MR. HANSEN: Yes, Your Honor.

THE COURT: Do you understand that, Mr. Ackerman, you're pleading guilty and you're exposed to a mandatory term of life in prison?

THE DEFENDANT: Yes, sir.

THE COURT: You probably don't like that but, I mean, that's the law. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: I suspect that your only hope of avoiding that sentence would be if you were to gain substantial assistance, a motion filed by the government.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Hansen; is that correct?

MR. HANSEN: Yes, sir.

THE COURT: Are you working toward that, Mr. Ackerman?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

THE DEFENDANT: Helping the government? Yes, sir.

THE COURT: All right.

Even though I'm familiar with this case, I'm going to have Mr. Hansen recite the facts that the government believes it could prove beyond a reasonable doubt if this case were to go to trial. Listen carefully to the facts, and I will then ask you if those facts are true and accurate in all respects.

Go ahead, Mr. Hansen.

MR. HANSEN: Thank you, Your Honor.

Your Honor, if this case went to trial, the following facts would be proven. The defendant, Benjamin C. Ackerman, is a United States citizen, born on July 26, 1972, and he has a felony drug conviction for the sale of cocaine, possession of cocaine, possession of cocaine with intent to sale, and possession of cocaine, all of which occurred in the Circuit Court, Twelfth Judicial Circuit in and for Manatee County, Florida, and this Court did go over those previously.

On February 23rd, 2005, in response to a loud music call from an apartment/condo complex in Bradenton, Manatee County, Middle District of Florida, a Bradenton police officer found the defendant, Benjamin Charles Ackerman, Jr., in the process of cutting up cocaine base, also known as crack cocaine, which he had just cooked, manufactured in his second floor apartment of that apartment/condo complex.

The officer observed Ackerman cutting the crack cocaine cookie into small pieces on the apartment's kitchen countertop, and observed the coconspirator standing next to Ackerman at the counter cutting up cloth.

When Ackerman observed the officer, he wiped the crack cocaine he had on the countertop to the floor. A subsequent search of the kitchen resulted in finding that the defendant was in possession of 93 grams of cocaine base, which he intended to sell and distribute. In addition, officers found approximately 600.6 grams of marijuana packaged for sale, and approximately 40 grams of the drug ecstasy in the apartment.

Officers also found 126.5 grams of cocaine powder in a sock in the coconspirator's purse and $62,760 in U.S. currency, and approximately 743 grams of powder cocaine in a safe located in the apartment. Two

hundred dollars of the currency was counterfeit.

Post-Miranda, the defendant admitted that the drugs and firearms in the apartment were his, that he had purchased one of the firearms and that he was holding the other firearm for another individual, and that he was in possession -- in the process of cutting up crack cocaine for distribution when found by the police.

He also admitted that he sold approximately two kilograms of cocaine a week, and made approximately 5,000 a week profit after paying his runners.  He also indicated that he laundered his money through his parents' businesses, and used some of his drug proceeds to purchase the automobiles mentioned in paragraph A-11 above.

Both firearms, the Standard Arms nine millimeter pistol and the Smith and Wesson .357 caliber revolver were manufactured outside the State of Florida and had traveled in interstate commerce before being found in the defendant's apartment.

THE COURT:  Mr. Ackerman, are those facts true and correct as far as you know?

THE DEFENDANT:  About this laundering money through my parents' businesses --

MR. OSTRANDER:  What's that?

THE DEFENDANT: My parents' business.

THE COURT: It says he also indicated that he laundered his money through his parents' businesses and used some of his drug proceeds to purchase the automobile mentioned in paragraph A-11. Those are the list of vehicles we talked about earlier. That's what you're referring to?

THE DEFENDANT: Yes, sir.

THE COURT: Is that an accurate statement?

THE DEFENDANT: Yes, sir, it is. I said it.

THE COURT: Other than this agreement, I'll ask you once again, are there any understandings, representations, promises that you are relying on in entering a guilty plea?

THE DEFENDANT: Yes, sir.

THE COURT: There are no other agreements and understandings?

THE DEFENDANT: I understand, Your Honor. I'm pleading guilty.

THE COURT: And I know you're a little nervous. But other than what's in this agreement, is there anything else that you're relying on that I should be aware of?

THE DEFENDANT: That's it.

THE COURT: Is that it?

THE DEFENDANT: That's it.

THE COURT: Okay. You hope to gain substantial assistance from the government, right?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if I accept your guilty plea, there will be no trial, correct?

THE DEFENDANT: Yes, sir.

THE COURT: The only thing left will be a sentencing hearing which will be conducted in about two months.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: We've talked a little bit about these sentencing guidelines, and I may not have mentioned this. But in the presentence report, the probation office will actually go through the sentencing guidelines and compute them, and it will be set out paragraph by paragraph. And it will conclude with a guideline range that the probation office recommends.

Of course, if there's disagreement about whether probation was correct, I'll resolve that at the time of sentencing. But do you understand that I will not be able to determine what the applicable guideline range is until the time of sentencing?

THE DEFENDANT: Yes, sir.

THE COURT: And you'll have a chance to review that with Mr. Ostrander before the sentencing hearing.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, of course, at your trial, as I mentioned to you, the government has the entire burden of proof, that is, the government must prove your guilt beyond a reasonable doubt. You are presumed to be innocent. By virtue of your not-guilty plea, you may go to trial and persist in that not-guilty plea and put the government to its burden of proof. And the jury would be instructed that you are presumed to be innocent unless and until the government proves your guilt beyond a reasonable doubt.

Do you understand all of that?

THE DEFENDANT: Yes, sir.

THE COURT: But if you plead guilty, there will be no trial, you're admitting your guilt, and the only thing left will be the sentencing hearing.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Hansen, are there any other questions that you would suggest that I pose to the defendant?

MR. HANSEN: No. I think you've covered

everything, Your Honor.

There was in paragraph A-12 found on page 10 and part of 11 of the plea agreement, the defendant did in the plea agreement agree to abandon his rights to the two firearms in addition to the forfeiture provision.

THE COURT: Yes. Mr. Ackerman, you're giving up your interest in those two firearms. You're forfeiting them or abandoning them to the government, the nine millimeter and the .357.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Ostrander, can you suggest any additional questions I should pose to the defendant?

MR. OSTRANDER: No, Your Honor.

THE COURT: Mr. Ackerman, before I ask you how you plead to Counts One and Five, do you have any questions of me?

THE DEFENDANT: No, sir.

THE COURT: Do you need anymore time to speak with Mr. Ostrander?

THE DEFENDANT: No, sir.

THE COURT: I can tell you're not particularly thrilled about this, and I understand that. But this isn't about whether you're happy or not, it's about whether or not you understand what you're doing, you

understand your rights that you're giving up, and that you'll be giving up your right to a trial.

Do you understand all of that?

THE DEFENDANT: Yes, sir.

THE COURT: How do you plead, then, sir, to Count One of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And how do you plead, sir, as to Count Five of the indictment, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Based upon your responses to my questions today, I do find that you have made a knowing and voluntary guilty plea to Counts One and Five of the indictment, that you are competent and capable of entering an informed plea, that you are aware of the nature of the charges and the consequences of those guilty pleas, that your guilty pleas are supported by an independent basis in fact containing each of the essential elements of the offense. I will, therefore, accept your guilty pleas as to Counts One and Five and adjudicate you guilty of those offenses.

I am going to refer this matter to the United States Probation Office for the preparation of a presentence investigation report. We do need to have a sentencing date, Madam Clerk.

COURTROOM DEPUTY CLERK:  Your Honor, June 5th, 2006 at 1:30.

THE COURT:  I will schedule this for sentencing at 1:30 on June 6th, 2006.

COURTROOM DEPUTY:  June 5th.

THE COURT:  June 5th?  I'm sorry, June 5th. That's a Monday, June the 5th.

Counsel, any conflicts that you know about at this time?

MR. HANSEN:  Not that I'm aware of, Your Honor.

MR. OSTRANDER:  No, sir.

THE COURT:  All right, then.

I will refer the government and the defendant and counsel to the United States Probation Office to assist them in preparing a presentence report.

Thank you, and we will be in recess.

(Hearing concluded at 10:30 AM.)

C E R T I F I C A T E

STATE OF FLORIDA            )

COUNTY OF HILLSBOROUGH    )

I, Linda Starr, RPR, Official Court Reporter for the United States District Court, Middle District, Tampa Division,

DO HEREBY CERTIFY, that I was authorized to and did, through use of Computer Aided Transcription, report in machine shorthand the proceedings and evidence in the above-styled cause, as stated in the caption hereto, and that the foregoing pages, numbered 1 through 44, inclusive, constitute a true and correct transcription of my machine shorthand report of said proceedings and evidence.

IN WITNESS WHEREOF, I have hereunto set my hand in the City of Tampa, County of Hillsborough, State of Florida, this 28th day of July 2014.


_/s/ Linda Starr_____
Linda Starr, RPR, Official Court Reporter