UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

       vs.           CASE NO. 8:05-CR-144-T-27TGW
                        5 JUNE 2006
                        TAMPA, FLORIDA
                        2:40 - 3:20 PM
                        PAGES 1 - 28

BENJAMIN CHARLES ACKERMAN, JR,

    Defendant.

_____/

TRANSCRIPT OF SENTENCING PROCEEDINGS
BEFORE THE HONORABLE JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:    **Donald Hansen**
                        **Thomas Smith**
                        United States Attorney's Office
                        Middle District of Florida
                        400 N. Tampa Street
                        Suite 3200
                        Tampa, Florida 33602

For the Defendant:    **Thomas H. Ostrander**
                        2701 Manatee Avenue, W
                        Suite A
                        Bradenton, Florida 34205

Court Reporter:       Linda Starr, RPR
                        Official Court Reporter
                        801 N. Florida Avenue
                        Suite 13B
                        Tampa, Florida 33602

Proceedings recorded and transcribed by computer-aided stenography.

COURTROOM SECURITY OFFICER:  All rise.  This Honorable Court is now in session, The Honorable James D. Whittemore presiding.

Be seated, please.

P R O C E E D I N G S

THE COURT:  All right.

We're here in the matter of United States versus Benjamin Charles Ackerman.  Let's get the appearances on the record.  For the government?

MR. HANSEN:  Donald Hansen for the United States, Your Honor.  And accompanying me today is Terry Hunt with ATF, and Mr. Thomas Smith who is with the Statewide Prosecutor's Office.

THE COURT:  And for the defendant?

MR. OSTRANDER:  Good afternoon, Your Honor, Thomas Ostrander.  And Mr. Ackerman is present in the courtroom.

THE COURT:  Good afternoon, gentlemen.

We have a presentence report which has been prepared by the United States Probation Office.  The record in this case reflects Mr. Ackerman entered a guilty plea before me to Count One of the indictment, which charges him with possession of firearms, having been previously convicted of a felony; and Count Five, which charges him with conspiracy to possess with intent

to distribute 50 or more grams of cocaine base.

I've accepted those guilty pleas and adjudicated him guilty of those offenses, and I reiterate those adjudications at this time. I also have the government's motion under 5K1.1 which we'll take up in a moment.

The addendum indicated there are no unresolved objections to the report or the application of the guidelines. Mr. Hansen, is that correct?

MR. HANSEN: Your Honor, that's correct. That's what we notified probation on.

For a housekeeping matter, however, probation -- asset forfeiture has requested that I bring something to the Court's attention. Under the plea agreement, the defendant did, in fact, agree to forfeit $62,760 in United States currency.

However, under the -- in the probation report, in the factual situation, I failed to point out that the defendant agreed that those -- that the money was, in fact, the result of drug proceeds. And paragraph 16 of the presentence report fails to point out that he did acknowledge to the officers that that money was the result of drug proceeds.

So I'm asking that he do -- that the defendant does state for the record that that money is, in fact,

due to drug proceeds and that it is his intent to have it forfeited.

THE COURT: Those are the proceeds listed on page 16 of the plea agreement as part of the factual basis?

MR. HANSEN: That's correct, Your Honor.

THE COURT: Mr. Ostrander?

MR. OSTRANDER: Your Honor, I guess all that's left to do is for Your Honor to request of my client that he's willing to make that admission.

THE COURT: Well, Mr. Ackerman, it looks like in your plea agreement at the factual basis, I'm looking at pages 15 and 16, $62,760 was found with some powder cocaine in a safe located in the apartment, $200 of which was counterfeit.

You've got an agreement at page -- beginning at page seven, paragraph 11, setting forth your agreement to forfeit to the United States the following assets, the first of which is $62,760 in United States currency. Was that money drug proceeds?

THE DEFENDANT: Yes, it was, sir.

THE COURT: All right.

And that's consistent with your plea agreement, correct, that you're forfeiting those things along -- there's some cars and things, as well, correct?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Ostrander, have you had a chance to review the report with Mr. Ackerman?

MR. OSTRANDER: Yes, I have, Your Honor.

THE COURT: No objections to the report or the advisory guidelines?

MR. OSTRANDER: Your Honor, I would note for the record that I have not filed objections to the PSR. I have reviewed them. There are several issues that perhaps might have raised colorable issues, and I would just like to make a record to preserve the issue should my client need to revisit them in postconviction.

Number one is the fact that he was charged with possession of a firearm by convicted felon under 922(g)(1) and 924(a)(2). It's not a 924(c) case. I had considered filing an objection because he's also received a two-level enhancement for possession of a firearm under 2D1 -- I believe it's (1)(b), which provides that an enhancement is appropriate for a defendant who is in possession of a firearm.

Arguably, it's double-counting. However, I think the case law supports the enhancement. And I would just like to note that so -- because I had mentioned it to my client, and I want the record to reflect what my decision was in deciding not to pursue

that.

Additionally, as a matter of fact, he and I just spoke about that an hour ago. And I did some further research, and I just want him to understand that decision.

THE COURT: The Eleventh Circuit has addressed that, has it not?

MR. OSTRANDER: I'm sorry?

THE COURT: Hasn't the Eleventh Circuit addressed that?

MR. OSTRANDER: Yes. Yes, Your Honor. And in addition to the gun, I would like to point one thing out to the Court and to my colleague, Mr. Hansen. He was given a two-level downward departure for acceptance of responsibility. And the government advised me that at the time of the plea that they did not feel that the third level was appropriate. I accept that decision.

But I need the Court -- I think it's important that this Court understand that when I -- when I was retained to represent Mr. Ackerman, he had previously had three other lawyers; two who had represented him when it was a state court case, and a third who was a court-appointed federal CJA attorney. Obviously -- I shouldn't say obviously, but he was a competent attorney. I'm not challenging anything he did.

But early on, it was raised that there was a significant suppression issue -- as you recall, we litigated that before you, that my client and his family felt it was important to -- to defend their constitutional rights under the Fourth Amendment by pursuing.

We pursued it and we lost. And it was sometime after that that we were meeting -- I think we were scheduled almost within two weeks or so for a trial once that issue had been resolved. When he finally chose to plead guilty was on the eve of trial, and so he lost that point.

I do want the Court to understand, though, that it was not one of these things where there was no reason for -- other than the anger of the family and the defendant for slogging it out with the government until the last moment where they had no other choice. I believe that the issue that was raised was significant, it was appropriate, and his mother and he believed in that issue. And they made it known to me. And after I looked at it enough times, I felt that it was an issue that needed to be visited.

So even though I understand why Mr. Hansen wasn't willing to give it, that I hope that ultimately when we get around to our -- our mitigation arguments

that I can, without revisiting this all over again, explain to the Court why I think it would be more appropriate for a mitigation issue by suggesting that this was not simply being obstinate, but simply a decision made by everyone to pursue the protection of his Fourth Amendment right.

Oh, and -- I'm sorry.  I have one more thing. And I know the judge has heard this before.  We have an abundance of federal jailhouse lawyers who are always bringing forth issues from the Big C Citizen -- the Ballito type of issues toward -- the one that I'm going to raise to you, which is the fact that my client has not had the opportunity to be in -- detained in a federal facility which, sometime in the distant past, may have been fruitful as a downward departure.

My client, in fact, brought that up to me a short time ago, and I explained to him that once upon a time, some of the judges around here in the Eleventh Circuit in the Middle District may have recognized that, and I know there's old case law in the Second Circuit, but that I didn't believe that was a viable issue and for that reason I did not file an objection or raise that.  But I did want to make a record to protect my client.

THE COURT:  Mr. Hansen, any comments on the

presentation by Mr. Ostrander?

MR. HANSEN:  No, Your Honor.  But the issue about the two levels for the guns is moot, as he does qualify under the enhancement aspect of the fact that he's an armed career criminal -- or a career criminal, I should say.  Paragraph 35 does address that.

THE COURT:  Well, this defendant is subject to a chapter four enhancement as set forth in paragraph 35 under Section 4B1.1.  He is a career offender.  He was 32 years old at the time of the commission of the instant offense, and he had at least two prior felony convictions, controlled substance violations as set forth in paragraph 35.

With respect to the comments of Mr. Ostrander, Mr. Ackerman, he's correct.  Under the current case law, it is not considered to be double-counting when you get the two-level enhancement under these circumstances.

And it serves no purpose to make an objection that the case law is squarely against you.  In fact, I think lawyers are reluctant to do that for fear of being accused of raising frivolous motions.

I took no offense on the motion to suppress.  I think you had a legitimate argument.  You didn't prevail.  But there was an extensive hearing involving genuine issues, as far as I'm concerned.  Whether

Mr. Hansen agrees or not is not the point. And I think it was thoroughly and ably litigated. I don't know how long my order was, but it was fairly extensive, as I recall.

As far as where you've been detained, Mr. Ostrander is absolutely correct. There was a point in time when federal judges would justify a downward departure because defendants had been detained in small county jail facilities. That's no longer a basis for departure, but it was at one point in the past, and you may very well have heard about that.

Let me then, subject to the government's motion, determine the advisory guidelines based on the undisputed facts set forth in the report to be as follows: We have a total offense level of 35, criminal history category Roman Numeral VI. This defendant faces a mandatory term of life imprisonment as to Count Five. That's to be followed by 10 years of supervised release as to Count Five, two to three years as to Count One.

There's a 20,000-to-4-million-dollar fine range, and a 200-dollar special assessment applicable to this case.

What says the government on its motion under 5K1.1?

MR. HANSEN: Your Honor, we did file that

motion. We felt under the circumstances, not to -- let's put it this way. The defendant, right after he was arrested, cooperated fully with the authorities. He talked with them, assisted them, cooperated in contacting his supplier or one of his suppliers, and asked that guy to deliver more cocaine. I think he asked for five kilograms or so.

That individual did, in fact, react and agree to meet with him. And when he came to the place of the meeting, he was arrested by law enforcement and was found in possession of four kilograms of powder cocaine.

Under the circumstances, that case was picked up by the state. Our office was asked whether or not we would prosecute that case. The guidelines, if it had been five kilos, I think it would have been prosecuted by our office. At four kilos, it was not. The state took that case. However, the state granted bond, and the individual is a fugitive from justice as we speak at this point.

THE COURT: This was the fellow that was supposedly making some threats?

MR. HANSEN: No. This was the fellow that was supplying the defendant.

THE COURT: I'm talking about after he was arrested, though. No?

MR. HANSEN: Not that I'm aware of, Your Honor.

THE COURT: Maybe I'm confusing this with another case.

MR. HANSEN: I'm not aware of any threats that were involved in this particular case. But needless to say, that has nothing to do with the defendant. And he did, in fact, attempt to assist.

Now, shortly thereafter, he ceased assisting the United States and basically was not found for a great length of time. And it was through assistance of another defendant that the United States was finally able to arrest him subsequent to his indictment in this case, sometime later after the indictment.

And the defendant has, in fact, had his day on his motion. That's fine. The United States has no objection to that. The United States did not file the one level because our policy is when a defendant causes us to prepare for trial, then he doesn't get that additional third level.

And we were -- we had to prepare for trial. We were, in fact, prepared for trial. And he didn't plead until the eve of the trial itself. So, I mean, I had done everything up to that point other than walk in and start making argument or picking a jury. So that's why he didn't get his third level.

But we felt that he still should be given some consideration. If he's not given consideration under that situation, he was going to go away to life without parole. And we felt that by giving him those two levels, that it certainly puts him in a position with the Court where the Court could, in fact, sentence him to a significant lesser sentence than life without parole, and we think that, based upon everything, that that would be appropriate.

THE COURT: Mr. Ostrander, your comments.

MR. OSTRANDER: Your Honor, I agree with pretty much everything Mr. Hansen said. It is correct that my client, upon being arrested, immediately began cooperating. And I don't know what the details were that resulted in him ceasing to cooperate. By a coincidence, it turned out that I happened to represent the person that turned Mr. Ackerman in before I even knew Mr. Ackerman during his cooperation. But it didn't turn out to be a conflict because he had already been in custody. All the person did was tell them where he was.

In any event, you know, the -- again, I wasn't suggesting that the government made a mistake in not giving us the point. It was clear to me at the time that we had arranged finally the plea that I thought that Mr. Hansen was being generous and honorable in the

fact that he was honoring the 5K1 agreement, despite the fact that I think at that point in time there had been no plea agreement, so my client didn't violate any plea agreements.

But, again, I think Mr. Hansen, obviously, I feel, did the appropriate thing and the honorable thing in honoring that promise, despite the fact that it was six months or so before my client was located.  Not that he was hiding, he was just living in Bradenton.  It's just that nobody knew where he was, and somebody else found him.

But would you like me to allocute for --

THE COURT:  Yes, sir.  I think now would be the time.

I'll grant the government's motion, the extent of departure I'll determine after hearing all matters in mitigation.

MR. OSTRANDER:  Thank you, Your Honor.

Your Honor, as I look at it right now, if I'm correct in reading the -- the sentencing options, because at the time the Rule 5K1 motion hadn't been factored in, it simply appears that as a result of the government's filing of the 5K1 motion, that my client is removed from the maximum life imprisonment penalty for Count Five.

In light of that, it would appear then that the client is looking at a level 33, criminal history VI, which is, by my calculations, 235 months to 293 months. If the Court was to give the client the low end of the guideline, he's looking at 20 years.

Now, this -- Mr. Ackerman is only 33 years old. And, unfortunately, according to his criminal history, his -- some of it was as a juvenile from age 18, 19 on pages five and six -- actually, most of it, paragraph 40, 41, 42, 43, 44, and then at age 20, paragraphs 45, 46, 47, he had another spat of criminal activity, which mostly is driving with license suspended but also possession of marijuana and cocaine and another one in paragraph 48 at age 20. And there's another one in paragraph 49 at 22, another one at 26. And it sort of kind of follows him up until the time he was age 28.

So he has a criminal history, which, if we looked at it under a criminal history VI, I think anybody would agree that it is a fairly significant criminal history.

However, in coming to know Mr. Ackerman and working with him and his family, since this last time that he has pled and turned himself -- or has pled since I met him, that he began -- when he made his plea, has been cooperating with the United States, to the extent

that he can because he's been incarcerated for quite sometime, but he has provided information.

I was present at one debriefing with several agents, none of which has born fruit. It may, we don't know. But it's my understanding he also has other people that want to try to help that hasn't developed anything to this point in time, either.

Mr. Ackerman's family has been supportive and has suggested that they will be there for him, no matter what, and helped him all the time he was on the outside and was very involved in his defense.

I would simply ask the Court -- I believe, Judge, based on what I've seen that he's a person that, in determining an appropriate sentence, does not need to spend 20 years in prison. The state court charges that he has, unfortunately as we see in federal court, suggest a pattern of behavior that the state either doesn't want to punish by incarceration or doesn't have the means or ability or will.

And so what we find is people that kind of roll through that system, not suggesting that that's appropriate, but suggesting that when they come to us, the federal defense attorneys, the federal prosecutors and the federal judges, that all of a sudden they're shocked by the fact that they're looking at life without

parole under circumstances such as this, because he's a career offender, which he never was considered that in the state court and probably wouldn't have been.

But I'm just asking the Court to consider -- he's looking at 20 years. I believe if the Court was to consider giving him the low end of the guidelines as we stand right now, if the Court would consider another addition to the downward departure, despite the fact that additional prosecutions have not been forthcoming.

The fact is he was able to turn over to the government another four kilos of cocaine which he didn't even have in his possession to start off with, and the arrest of that dealer which who readily and within a very short period of a phone call delivered four kilos, which I believe we all think is a significant amount.

I understand what Mr. Hansen said that the policy in his office at that time for whatever reason was that wasn't enough for a federal prosecution. But clearly, the state intended to prosecute it until the defendant became a fugitive.

I would simply ask the Court to consider a departure from the 20-year sentence to enable my client to straighten himself out while he's in prison, go through a drug program, clean himself up, and then when he's ready to come back out, his family will be there

for him and he can be a useful member of society, Your Honor.  Thank you.

THE COURT:  Thank you, Mr. Ostrander.

Mr. Ackerman, what would you like to say, sir?

THE DEFENDANT:  Your Honor, I've been through this 10 months now.  I have changed my life.  Up to this time, I've been getting in trouble, I've been doing drugs, I've been doing a lot of drugs, Your Honor.  I'm going to clean myself up and get myself together for my children, for my family.  I just want to get myself together.

I'm sorry for my family going through this.  I'm sorry for me going through this.  But I'm trying to do the best I can.  So I'd like the mercy of the Court.  You know, I changed my life.  I'm going to turn myself over to God.  And I just need a little help right now, you know.  So that's all I've got to say, Your Honor.

THE COURT:  Is there a facility you want me to consider recommending?  Coleman?

THE DEFENDANT:  Coleman.

THE COURT:  All right.

I'm told that bed space up there is limited, but I'm going to recommend that.  I hope you get it because it's closest to your family, and I know your mother would want to visit you.

MR. OSTRANDER: Judge, as a second option, Jesup would probably be reasonable, also. It's not that far from here.

THE COURT: Well, Mr. Ackerman, I'm going to talk to you not only as a judge but a little bit of old defense lawyer in me.

You walked in here facing life imprisonment. Do you know what that means in the federal system?

THE DEFENDANT: Yes, sir.

THE COURT: That means you die in prison. No parole. You've got a break. That prosecutor filed this motion even though you basically, from their standpoint, disappeared. I understand what Mr. Ostrander is saying that you were down around Bradenton, but nobody knew where you were.

He didn't have to file that. What that effectively does, whatever departure, whether I go two levels or three levels or what-have-you, you're going to get out of prison one day. So I want to start by making sure you appreciate that whatever has happened in this case, your chance of walking out of this courtroom and not doing prison time was slim to none, unless you had won that motion, which you didn't.

I'm going to tell you now it was litigated very well by your lawyer. He raised good issues, made good

argument. The case law was against you. There's nothing you can do about that. I mean, you're surely not being penalized by anybody for exercising your right to challenge the search.

You have done really nothing in your adult life but take drugs and get in trouble, by your own admission. So it's time to clean up, and it's going to take you some time to do that. Your mother loves you like you're a baby. I know that. She's been in this courtroom three or four times. But you're a man, and you've got to accept the responsibility for your actions.

The hard part about these sentencings is seeing family members in the back of the courtroom and, you know, if you turn around and talk to them, you'd probably choke up. And that's the result of what happens here.

I hope you do clean up, take care of yourself. I hope you take advantage of the educational opportunities in prison, that you'll develop some interest in a job, get some job skills so when you get out, you can be productive. Because so far, you haven't been very productive for yourself or your family or anybody else.

I remember when you changed your plea, having

some concern about how you felt about how the system has treated you. All I can tell you is that everything that could have been done for you has been done. Most of it is in your hands. If you can cooperate and earn a further reduction, that's entirely up to you, or those on your behalf.

But I'm going to tell you now, that prosecutor did something that many prosecutors would not have done by filing this motion.

That statement, Mr. Hansen, that Mr. Ackerman confirmed that the 62,000 and some odd dollars were the result of drug activities, what's the significance of that, as you understand it, from your forfeiture people?

MR. HANSEN: Well, my understanding is that if we don't have that on the record that it was, in fact, drug proceeds, someone later could come in, maybe one of his family members or whatever and claim, oh, that was mine. I didn't do a very good job, apparently, and it was passed over by forfeiture, didn't catch it first time around on the plea agreement.

So normally, you know, the basis for the forfeiture must be placed in the fact situation, as you well know, and that one aspect was missing. And that's why they brought it to my attention.

THE COURT: So Mr. Ackerman's statement is

consistent with his agreement under the plea agreement to forfeit those items that have been specified.

MR. HANSEN: Consistent with his agreement under the plea agreement, consistent with the facts as to what he mentioned at the time when he was cooperating immediately after his arrest.

I don't believe Your Honor placed a preliminary order of forfeiture on the record yet. At least I haven't seen it.

THE COURT: Well, I signed one.

MR. HANSEN: Did you?

THE COURT: Actually, I just signed it -- what's the 2nd, Friday?

MR. HANSEN: Okay. That's probably why I haven't seen it then, Your Honor.

THE COURT: I've got the original up here. It has been signed.

MR. HANSEN: So I was just asked to make sure that that was brought to your attention and ask that a forfeiture final order be made part of the judgment.

THE COURT: All right.

Well, I've considered the advisory guidelines, as well as the enumerated sentencing factors set for in Section 3553(a) of Title 18. This defendant's characteristics are adequately set forth in the

presentence report. He has a lengthy criminal history. The nature and circumstances of the offense are also adequately and accurately recited in the report. The Court conducted a lengthy suppression hearing, basically a mini trial, if you will.

The offense is serious. The sentence imposed must reflect the seriousness of the offense, not just to promote respect but to provide appropriate punishment and, hopefully, deter others. This defendant has not demonstrated his ability to function in a free society without harm. So this sentence should also serve to protect the public.

He is in need of educational and vocational training. He'll get that in the Bureau of Prisons. And I will be recommending the 500-hour intensive drug treatment program, if he is eligible, which would provide some much needed education and drug counseling. As he has indicated, he's been using drugs pretty much all his adult life.

The government's motion under 5K1.1 has been granted. I'm going to depart downward three levels. That additional level is in recognition of this defendant's cooperation today, as well as that which he provided the government earlier.

The net effect of it is not terribly long, but

it is intended to represent to the defendant that he will be getting consideration not only by the government, but by the Court for his cooperation. That takes us, then, to a level 32, criminal history category VI. That provides for a range of 210 to 262 months.

Accordingly, pursuant to the Sentencing Reform Act of 1984, it is the judgment and sentence of the Court that the defendant be imprisoned and committed to the custody of the Bureau of Prisons as follows: As to Count One, 120 months; as to Count Two, 216 months. I'm sorry, Count Five, 216 months. So that's 120 months as to Count One, 216 months as to Count Five, those terms to run concurrently.

He will serve a 10-year period of supervised release, which consists of a three-year term as to Count One and a 10-year term as to Count Five, again, concurrent, subject to the standard terms and conditions adopted by the Court in the Middle District of Florida.

The following special conditions will apply: He'll perform 300 hours of community service, but I will allow him to substitute hourly gainful employment at the direction of probation.

He will participate in a program for the treatment of narcotic addiction or drug or alcohol dependency, which may include testing for the detection

of substance use or abuse.  He'll be required to contribute to the cost of those services in an amount determined to be reasonable by probation.  The Mandatory Drug Testing Requirements of the Violent Crime Control Act are imposed.  I will waive a fine, but order that he pay a 200-dollar special assessment, which is due immediately.

Also, pursuant to his plea agreement and as requested, the defendant is to forfeit those items or assets identified in the plea agreement and the preliminary order of forfeiture, and that will be made part of the final judgment.

What says the government as to Counts Two, Three and Four?

MR. HANSEN:  Your Honor, in agreement with the plea agreement, we do ask that the Court dismiss those counts.

THE COURT:  Those counts are hereby dismissed pursuant to the plea agreement and that motion.

I will recommend to the Bureau of Prisons that, if eligible, this defendant be allowed to participate in the 500-hour intensive drug treatment program.  I will recommend the facility at Coleman and, alternatively, Jesup.  The defendant will be remanded to the United States Marshal to await designation.

Mr. Ackerman, you got 18 years. You're going to get credit for your time served in federal custody against that sentence. You may very well earn a Rule 35 motion. I don't know. That's outside my control. That's entirely up to the federal government.

I want you to remember once again you walked in here facing a certain life imprisonment. This will allow you to get out when you're still able to contribute to society and support your family. I hope that you'll take advantage of that.

To the extent permitted by your plea agreement, you have 10 days within which to appeal. A lawyer will be appointed to represent you if you choose to appeal, and the clerk will accept your appeal without payment of the filing fee.

Is there anything else we need to attend to here today? Mr. Hansen?

MR. HANSEN: Not by the United States, Your Honor.

THE COURT: Mr. Ostrander?

MR. OSTRANDER: No, sir.

THE COURT: Any objections to the sentence imposed or the manner in which it has been pronounced, from the government?

MR. HANSEN: Not by the United States, Your

Honor.

THE COURT:  Mr. Ostrander?

MR. OSTRANDER:  No, Your Honor.

THE COURT:  Thank you, gentlemen.  Good luck, Mr. Ackerman.  We'll be in recess.

(Hearing concluded at 3:20 PM.)

C E R T I F I C A T E

STATE OF FLORIDA            )

COUNTY OF HILLSBOROUGH     )

I, Linda Starr, RPR, Official Court Reporter for the United States District Court, Middle District, Tampa Division,

DO HEREBY CERTIFY, that I was authorized to and did, through use of Computer Aided Transcription, report in machine shorthand the proceedings and evidence in the above-styled cause, as stated in the caption hereto, and that the foregoing pages, numbered 1 through 28, inclusive, constitute a true and correct transcription of my machine shorthand report of said proceedings and evidence.

IN WITNESS WHEREOF, I have hereunto set my hand in the City of Tampa, County of Hillsborough, State of Florida, this 28th day of July 2014.


*/s/ Linda Starr*
Linda Starr, RPR, Official Court Reporter